469.074753                  DJO/nc

### IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| MUSEUM POINTE CONDOMINIUM, ASSOCIATION, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | )    No. 14 CH 4061 ) |
| THE TOWER RESIDENCES CONDOMINIUM ASSOCIATION, | ) ) ) ) |
| Defendant. | ) ) |

### DEFENDANT THE TOWER RESDIENCES CONDOMUNIUM ASSOCIATION'S VERIFIED ANSWER TO PLAINTIFF'S VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Defendant The Tower Residences Condominium Association ("Tower Residences") by and through its attorneys, Pretzel & Stouffer, Chartered, and for its Verified Answer and Affirmative Defense to the Verified Complaint for Declaratory Judgment, states as follows:

### PRELIMINARY STATEMENT

1. Museum Point and Tower Residences are condominium associations that administer buildings across the street from one another near the Museum Campus south of downtown Chicago. The buildings are separated by East 13th Street; Museum Point's building is located on the south side of East 13th Street (on the southeast corner of East 13th Street and Prairie Avenue), while Tower Residence's building is located on the north side of East 13th Street (on the northeast corner of East 13th Street and Prairie Avenue). The portion of East 13th Street that separates Tower 3 and Tower 4 is a private drive ("East 13th Street").

**ANSWER:** Tower Residences admits the allegations contained in Paragraph 1 with the exception that Tower Residences denies the allegation that East 13th Street is a "private drive."

2. Museum Pointe and Tower Residences are parties to an easement agreement titled "Grant of Public Access Easement" which was recorded with the Cook County Recorder of Deeds on November 6, 2002, as document number 0021228209 (the "Easement Agreement," a copy which is attached hereto as Exhibit A). Among other things, the Easement Agreement permits Tower Residences' owners, residents, guests, and related service and delivery vehicles to traverse over and onto East 13th Street. The Easement Agreement also requires Museum Pointe to maintain East 13th Street, as the Tower 3 parking garage is located underneath it. It does, however, place certain restrictions on the types of vehicles that are permitted onto and over East 13th Street.

**ANSWER:** Tower Residences admits that Museum Point and Tower Residences are parties to an Easement Agreement entitled "Grant of Public Access Easement," by virtue of their status as successors to the rights and obligations thereunder, which Easement Agreement was recorded with Cook County Recorder of Deeds on November 6, 2002, as Document No. 0021228209. Tower Residences admits that this Easement Agreement permits Tower Residences' and other members of the public certain rights to traverse East 13th Street as stated in the Easement Agreement and as necessary for the commercially reasonable right of enjoyment of the dominant parcel. Tower Residences further admits that an Easement Agreement attached to the Verified Complaint as Exhibit A appears to be a complete and correct copy of the Easement Agreement recorded on November 6, 2002. Tower Residences denies the remaining allegations contained in Paragraph 2.

3. One of those restrictions prohibits vehicles weighing more than 6,000 pounds (other than delivery trucks) from using East 13th Street. Indeed, Tower Residences should not be permitted to allow restricted vehicles to use East 13th Street when those vehicles will accelerate the wear and tear of the street and, under the parties' Easement Agreement, Museum Pointe would otherwise bear the full financial burden of repairing East 13th Street. Moreover, permitting vehicles over 6,000 pounds to constantly use East 13th Street could, over time, affect the structural integrity of the street and interfere with Museum Point's use and enjoyment of its parking structure underneath.

ANSWER: Tower Residences admits that the Easement Agreement places certain restrictions on the use of East 13th Street, which restrictions are enumerated in the Easement Agreement and which are to be interpreted with, and yield to, the dominant right of Tower Residences' commercially usable right of enjoyment. Tower Residences denies the remaining allegations contained in Paragraph 3.

4. Despite this clear prohibition, Tower Residences has been knowingly and intentionally violating the vehicular weight restrictions of the Easement Agreement. The Tower Residences building's refuse and garbage restrictions of the Easement Agreement. The Tower Residences building's refuse and garbage receptacles sit off of East 13th Street (as opposed to Prairie Avenue), and Tower Residences permits scavenger trucks that regularly weight in excess of 35,000 pounds – and which, at times, weigh nearly 50,000 pounds – to traverse over East 13th Street twice daily six days a week.

ANSWER: Tower Residences denies the allegations contained in Paragraph 4.

5. Predictably, as a result of such use by vehicles servicing Tower Residences in violation of the express terms of the Easement Agreement, that portion of East 13th Street separating the parties' building is now in imminent need of repairs, with the possibility of the rapid deterioration of the street being caused or accelerated by the garbage trucks that solely benefit Tower Residences and its residents. Despite repeated demands that Tower Residences abide by the vehicle weight restrictions in the parties' easement agreement, it refuses. Tower Residences suggests that somehow, despite the express, unambiguous language of the Easement Agreement, ti is entitled to use east 13th Street to accommodate its garbage pickup – with Museum Pointe assuming all associated costs – because that use is "commercially reasonable (and indeed essential) for the proper operation of Tower Residences."

ANSWER: Tower Residences admits that Tower Residences is entitled to the use of East 13th Street to accommodate garbage pick-up as a commercially reasonable and essential use of East 13th Street for the proper operation of Tower Residences. Tower Residences further admits that Museum Pointe bears the obligation of maintenance of East 13th Street. Tower Residences denies the remaining allegations contained in Paragraph 5.

6. By way of this complaint, Museum Pointe seeks a declaratory judgment that (i) the parties' Easement Agreement is clear and unambiguous, (ii) the Easement Agreement

3

prohibits Tower Residences from utilizing scavenger vehicles – or any vehicles except temporary delivery trucks – weighing more than 6,000 pounds that use East 13th Street, and (iii) Tower Residences is required to above by the Easement Agreement's terms, conditions, and restrictions as expressly written. Museum Pointe also seeks the reimbursement of its attorneys' fees as permitted by the Easement Agreement.

**ANSWER:** The text of paragraph 6 is a recitation of the relief sought by way of the complaint and does not contain allegations for admission or denial. Tower Residences denies that Museum Pointe is entitled to any of the relief sought in Paragraph 6.

## THE PARTIES

7. Plaintiff, the Museum Pointe Condominium Association, is an Illinois not-for-profit corporation established for the purpose of administering the residential condominium units located at 233 East 14th Street in Chicago, Illinois. Museum Pointe is a party to the Easement Agreement.

**ANSWER:** Tower Residences admits that Museum Pointe succeeded to the rights and obligations of the Easement Agreement but does not have sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 7 and therefore denies same.

8. Defendant, The Tower Residences Condominium Association, is an Illinois not-for-profit corporation established for the purpose of administering the residential condominium units located at 1235 S. Prairie Avenue in Chicago, Illinois. Tower Residences is a party to the Easement Agreement.

**ANSWER:** Tower Residences admits that the Tower Residences Condominium Association is an Illinois not-for-profit corporation established for certain purposes, among those being the administration of the residential condominium units located at 1235 S. Prairie Avenue in Chicago, Illinois. Tower Residences further admits that it has succeeded to the rights and obligations of the Easement Agreement.

## JURISDICTION AND VENUE

9.  This Court has jurisdiction over Tower Residences pursuant to 735 ILCS 5/2-209(b)(3), as it is a corporation organized under the laws of the State of Illinois.

**ANSWER:** Tower Residences admits the allegations contained in Paragraph 9.

10. Venue is proper is this forum under 735 ILCS 5/2-101 as the transactions and occurrences given rise to this controversy occurred in Cook County, Illinois, and because the parcels that are subject of the Easement Agreement are located in Cook County, Illinois.

**ANSWER:** Tower Residences denies that transactions or occurrences gave rise to a

valid claim by Museum Pointe. Tower Residences admits that venue is proper in this forum

for the determination of issues raised in the complaint.

## ALLEGATIONS COMMON TO ALL COUNTS

11. Museum Pointe and Tower Residences are parties to the Easement Agreement.

**ANSWER:** Tower Residences admits the allegations contained in Paragraph 11 by virtue of

their respective succession to the rights and obligations of Easement Agreement.

12. The Museum Pointe building sits to the south of East 13th Street, while the Tower Residences building sits to its north. Those buildings are divided by East 13th Street.

**ANSWER:** Tower Residences admits the allegations contained in Paragraph 12.

13. The Easement Agreement provides Tower Residences with a non-exclusive easement (the "Easement") over East 13th Street as the Dominant Parcel (as that term is used in the Easement Agreement) "for pedestrian and vehicular egress over, across and upon the Easement Parcel." (Ex. A at ¶ 1(a))

**ANSWER:** Tower Residences admits the allegations contained in Paragraph 13.

14. The Easement Agreement further provides that the use of the Easement shall be limited to pedestrian and vehicular ingress and egress subject to the following restriction:

> Commercial vehicles or trucks which are unsuitable for the Easement Parcel and which are incapable of making the necessary turns, including without limitation *commercial vehicles or trucks*

5

> *having a loaded weight in excess of Six Thousand (6,000) Pounds,*
> shall not be permitted over, across or upon the Easement Parcel.

(*Id.* at ¶ 2(a)) (emphasis added)

**ANSWER:** Tower Residences admits only that the passage quoted in Paragraph 14 is an accurate transcription of a portion of the Easement Agreement, which must be considered with the remaining terms of the Agreement. Tower Residences denies the remaining allegations contained in Paragraph 14.

15. Museum Pointe is solely responsible for maintaining East 13th Street, including any and all areas over which Tower Residences possesses the Easement. (*Id.* at ¶ 3(a)) The Easement Agreement explains that Museum Pointe's responsibility for maintaining East 13th Street is due to the "structural relationship between the roadway and the underground garage area [belonging to Museum Point] . . . ." (*Id.* at ¶ 13)

**ANSWER:** Tower Residences admits that Museum Pointe is solely responsible for maintaining East 13th Street, but denies the remaining allegations contained in Paragraph15.

16. The Tower Residences building's entrance is located on South Prairie Avenue, and access to its garbage receptacles is located along East 13th Street. Tower Residences, therefore, permits garbage trucks weighting in excess of 6,000 pounds to regularly travel on and over East 13th Street, which is the precise area that Museum Pointe granted Tower Residences the Easement.

**ANSWER:** Tower Residences admits that the only access to its garbage receptacles is located along 13th Street and that and that garbage trucks serving its building periodically travel on and over East113th Street but does not have sufficient information as to weights of the trucks and denies the remaining allegations contained in Paragraph 16.

17. The purpose of instituting the vehicular-weight restrictions was to minimize the repairs that would be necessary to East 13th Street, and to reduce the reoccurring costs that would be borne exclusively by Museum Point. Indeed, if Museum Pointe is required to maintain the East 13th Street with no contribution from Tower Residences, Tower Residences is not permitted

6

to use East 13th Street in such a manner that would make repairs necessary more often, thus increasing the express to Museum Pointe. But that is precisely what Tower Residences is doing.

**ANSWER:** Tower Residences denies the allegations contained in Paragraph 17.

18. The garbage trucks that service the Tower Residences building weigh substantially more than 6,000 pounds; in fact, they weight in excess of 35,000 pounds, and at times can exceed 50,000 pounds.

**ANSWER:** Tower Residences does not have sufficient information to form a belief as to the truth of Paragraph 18 and therefore is not able to admit or deny same.

19. Despite the weight restriction on vehicular traffic over East 13th Street, Tower Residences continues to knowingly and intentionally violate the Easement Agreement by refusing to (i) cease permitting its garbage trucks from traversing on or over East 13th Street, or (ii) relocate its trash receptacles along South Prairie Avenue.

**ANSWER:** Tower Residences denies the allegations contained in Paragraph 19.

20. Predictably, East 13th Street is now in need of costly repairs – repairs that, under the Easement Agreement, are the sole responsibility of Museum Point.₁
(1 Museum Pointe has engaged engineers to evaluate the extent to which Tower Residences' violations of the Easement Agreement have contributed to the deterioration of East 13th Street and the added expense for the required maintenance and repair associated therewith)

**ANSWER:** Tower Residences admits that Museum Pointe is solely responsible for maintenance of East 13th Street, does not have sufficient information to admit or deny the footnote allegation, and denies the remaining allegations contained in Paragraph 20.

21. Museum Pointe has sent numerous cease-and-desist demands to Tower Residences.

**ANSWER:** Tower Residences admits that it has received several demands from Museum Pointe in regard to the use of East 13th Street but denies the remaining allegations of Paragraph 21 as stated.

22.  In response, Tower Residences contends that it is not bound by the otherwise express vehicular-weight restriction in the Easement Agreement, arguing that Paragraph 19 "justifies the use of the Easement by Tower Residences for scavenger service because such usage is commercially reasonable (and indeed essential) for the proper operation of Tower Residences." (*See* January 24, 2014 correspondence from Tower Residences' attorney to attorney for Museum Point, attached here to as *Exhibit B*)

**ANSWER:** Tower Residences admits that its use of East 13th Street is a commercially reasonable and essential use and denies the remaining allegations contained in Paragraph 22 as stated.

23.  Tower Residences' claimed "commercially reasonable" justification for its otherwise admitted breach of the Easement Agreement not only contradicts the clear, unambiguous language of the vehicular-weight restriction, but it places a more onerous financial burden on Museum Pointe because it seeks to sanction an otherwise restricted use of the Easement; that use leads to more maintenance to East 13th Street for which Museum Pointe is otherwise contractually responsible.

**ANSWER:** Tower Residences admits that it has claimed that its use of East 13th Street is commercially reasonable and necessary but denies the remaining allegations contained in Paragraph 23.

## COUNT I – DECLARATORY JUDGMENT

24.  Museum Pointe re-alleges and incorporates Paragraphs 1 through 23 above though fully alleged herein as Paragraph 24 in its Count I.

**ANSWER:** Tower Residences adopts and asserts its answers to Paragraph 1 through 23 as its answer to Paragraph 24 as though the same were fully set forth herein.

25.  The Easement Agreement is a valid and enforceable agreement to which both Museum Pointe and Tower Residences are parties.

8

**ANSWER:** Tower Residences admits that the Easement Agreement contains certain valid and enforceable rights and obligations but denies that any such rights or obligations are necessarily enforceable or enforceable under any and all circumstances.

26. Paragraph 2 of the Easement Agreement prohibits any vehicles weighing more than 6,000 pounds (except temporary delivery trucks) from utilizing East 13th Street.

**ANSWER:** Tower Residences denies the allegations contained in Paragraph 26.

27. Museum Pointe has a tangible, legal interest in: ensuring that Tower Residences abides by the terms, conditions, and restrictions of the Easement Agreement; administering the Easement; and, maintaining East 13th Street free from unlawful interference by Tower Residences, including any actions in contravention of the Easement Agreement that contribute to the costs of repairs to East 13th Street for which Museum Pointe is otherwise responsible under the Easement Agreement.

**ANSWER:** Tower Residences admits that Museum Pointe is a successor party to the Easement Agreement which contains certain rights and obligations more fully stated in the Easement Agreement. Tower Residences denies the remaining allegations contained in Paragraph 27.

28. Museum Pointe contends that Tower Residences cannot unilaterally elect to pick and choose which provisions of the Easement Agreement by which to abide based on what it considers to be "commercially reasonable" for its operations, particularly when it is not willing to share in the expense of maintaining East 13th Street. It has thus far refused to contribute to the costs of maintaining, repairing, or replacing East 13th Street.

**ANSWER:** Tower Residences denies the allegations contained in Paragraph 28 except that Tower Residences admits that it has not contributed, nor is it obligated to contribute to, costs of maintaining, repairing, or replacing East 13th Street.

9

29. Meanwhile, as a party to the Easement Agreement, Tower Residences has a competing interest against abiding by the vehicular-weight restriction in the Easement Agreement or relocating its trash receptacles to a location away from East 13th Street.

**ANSWER:** Tower Residences denies the allegations contained in Paragraph 29.

30. Tower Residences contents that it is not required to abode by the Easement Agreement, despite the clear, unambiguous language to the contrary.

**ANSWER:** Tower Residences denies the allegations contained in Paragraph 30.

31. The parties' disparate interpretations of Tower Residences' obligation to abide by the Easement Agreement's vehicular-weight restriction constitutes a concrete dispute warranting an immediate and definitive determination of the parties' rights.

**ANSWER:** Tower Residences denies the allegations contained in Paragraph 31.

32. The resolution of the parties' rights will aid in the determination of the controversy presented herein.

**ANSWER:** Tower Residences denies the allegations contained in Paragraph 32.

33. Museum Pointe is entitled to the reimbursement of its attorneys' fees in the enforcement of the Easement Agreement pursuant to Paragraph 18 therein.

**ANSWER:** Tower Residences denies the allegations contained in Paragraph 33.

WHEREFORE, Plaintiff, Museum Pointe Condominium Association, is not entitled to any relief whatsoever against this Defendant. This Defendant further prays that this Honorable Court deny each and every aspect of relief sought in the Plaintiff's Verified Complaint and enter judgment in favor of this Defendant and against the Plaintiff finding and declaring that this Defendant's use of the East 13th Street is compliant with the terms of the Easement Agreement and is a necessary and commercially reasonable use of East 13th Street, which is a right held by this Defendant.

Affirmative Defense

NOW COMES, Defendant, The Tower Residences Condominium Association ("Tower Residences"), by and through its attorneys, Pretzel & Stouffer, Chartered and for its affirmative defense to the Verified Complaint for Declaratory Judgment, states as follows:

The Plaintiff's complaint is barred by the doctrine of laches as Tower Residences' scavenger service has operated garbage trucks on and over East 13th Street since the building was completed in 2006 without objection.

**VERIFICATION**

Under penalties as provided by law pursuant to Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true. As to those matters where the undersigned has claimed want of knowledge, the undersigned certifies that such representation of want of knowledge is true.

The Tower Residences Condominium Association

By _____
Matthew Joseph, President

Donald J. O'Meara, Jr.
PRETZEL & STOUFFER, CHARTERED
Attorneys for Defendant
One S. Wacker Drive, Suite 2500
Chicago, IL 60606
(312) 346-1973

domeara@pretzel-stouffer.com

11